### GRIFFIN v. WILKINSON et al.

### No. 6012.

Court of Appeal of Louisiana. Second Circuit.

March 6, 1940.

Frank E. Murphy and Chas. B. Emery, both of Shreveport, for appellant.

Hoye Grafton, of Shreveport, for appellee.

DREW, Judge.

Plaintiff instituted this suit seeking to recover from J. V. Wilkinson the amount of $200, with legal interest thereon from judicial demand, together with ten per centum attorney's fees. For a cause of action he alleged that defendant was during the year 1938 a duly licensed real estate broker, under the provisions of Act No. 236 of 1920, as amended by Act No. 175 of 1936, and that he gave bond, as required by law of real estate brokers, with Henry G. Caldwell as surety thereon, which bond was duly recorded in the Mortgage Records of Caddo Parish, Louisiana, and was conditioned as required by law.

Plaintiff further alleged that he consulted with the said defendant as a real estate broker and entered into an oral contract with him for the purchase of Lots 7 and 8, Block 25 of Fairfield Heights Subdivision of Shreveport, Louisiana, for a consideration of $1,100 This agreement was made on March 1, 1938, and plaintiff agreed to pay $100 per month. He paid $100 on March 30th and another $100 on May 2nd; and that immediately after making the last payment he found out that defendant had no authority or right to sell the property so he refused to make other payments and demanded the return of the money he had paid.

Plaintiff further alleged that the property he agreed to purchase had been subsequently sold by the owners to other persons and that it was impossible for defendant to have sold said property to him. On August 31, 1938, plaintiff made written demand on defendant and his surety on his bond for the return of the money paid and that more than thirty days have elapsed without payment being made to him and that he was therefore entitled to receive an additional amount of ten per cent as attorney's fees.

Defendant in answer admitted he was a duly licensed real estate broker and that he furnished bond as alleged. He admitted the agreement alleged to have been made with plaintiff and the receipt of the two payments of $100 each. He also alleged he had entered into a contract to purchase the lots from the then owners and was dealing with plaintiff as owner and not as a real estate broker. Defendant denied all the other allegations of the petition.

The lower court awarded plaintiff judgment as prayed for and defendant prosecutes this appeal. Plaintiff has answered the appeal praying for ten per cent damages for frivolous appeal.

A number of issues in the case which might have been controversial were disposed of by agreement and stipulation filed in the record. We quote from the first stipulation and agreement:

"Whereas the said H. O. Griffin, plaintiff, intends to sue the said J. V. Wilkinson and Henry G. Caldwell, the surety on the Real Estate Agent or Broker's Bond of the said J. V. Wilkinson; and

"Whereas the said J. V. Wilkinson, the defendant, desires to avoid a suit being filed against the said Henry G. Caldwell, the surety on the Real Estate Agent or Broker's Bond, to which the said J. O. Griffin is agreeable, so long as his rights to recover the said amount, with interest and penalties, are protected, and none of his rights or remedies are waived, and the said J. V. Wilkinson, the defendant, desires to make a cash deposit to secure the payment of any judgment as may be obtained by the plaintiff in this case, in lieu of and substitution of a suit being filed

against the said surety on his Real Estate Agent or Broker's Bond;

"Now, Therefore, it is stipulated and agreed that in order to avoid the filing of a suit against the said Henry G. Caldwell, the surety on the Real Estate Agent or Broker's Bond of the said J. V. Wilkinson, the said J. V. Wilkinson has and does hereby deposit with his attorney, Frank E. Murphy, the sum of $235.00, which said amount shall be paid by the said Frank E. Murphy for the payment of any final judgment as may be obtained herein by the plaintiff, J. O. Griffin, against the defendant, J. V. Wilkinson, and for and in the consideration of the said cash deposit being made, the plaintiff, J. O. Griffin, agrees to file and maintain this suit against the said J. V. Wilkinson, only, and agrees not to bring or prosecute this suit against the said Henry G. Caldwell, the surety on the said Real Estate Agent or Broker's Bond of the said J. V. Wilkinson.

"It is specially stipulated, however, that by bringing and filing this suit, the rights of the plaintiff, J. O. Griffin, to sue for and recover the penalties, as are provided by Act No. 225 of 1918, are especially maintained, and are in no manner waived, and it is agreed and stipulated that the court shall, in the event a judgment is rendered against the defendant, J. V. Wilkinson, and considers that the penalties or attorney's fees, as provided for by said Act No. 225 of 1918, are allowable, or would be allowed, had the said Henry G. Caldwell been a party to this suit, and sued as the surety on the said Real Estate Agent or Broker's Bond, that the Court shall and is hereby authorized to render judgment for the said penalties or attorney's fees, it being especially stipulated that this suit shall be considered as if filed against both principal and surety on the said Real Estate Agent or Broker's Bond.

"The said Frank B. Murphy, attorney for J. V. Wilkinson, hereby agrees that the said cash deposit, as made with him, or as much thereof as is necessary for the payment of the said judgment, will be immediately paid to the plaintiff through his attorneys upon any judgment as rendered herein becoming final and executory, and that it shall not be necessary for the said plaintiff to issue executions."

In a supplemental stipulation, we find the following:

"That the letter dated Shreveport, Louisiana, June 27, 1938, and addressed to Mr. Louis Lyons, Bossier City, Louisiana, and signed by J. V. Wilkinson, and which is identified as D–1, in connection with the testimony as given by the said J. V. Wilkinson upon the trial of this said cause, be filed with this stipulation and considered the same as if filed as a part of the evidence adduced on the trial of this cause.

"It is further stipulated that if placed on the witness stand, Mr. Louis Lyons would testify that he does not recall having received the letter marked D–1 for identification, written by J. V. Wilkinson to him under date of June 27, 1938, and that not recalling having received the letter, he did not communicate the letter to Mr. J. O. Griffin and did not advise or discuss with Mr. J. O. Griffin the contents of said letter.

"That if the plaintiff, J. O. Griffin, was recalled to the witness stand to testify in reference to the said letter, he would testify to the fact that he had no knowledge of such letter and that such letter or the contents of the same was never communicated to him or discussed with him in any manner by Mr. Louis Lyons.

"That this stipulation, as to the filing of the letter as a part of the evidence adduced on the trial of this cause, and as to the testimony as would be given by Mr. Louis Lyons and Mr. J. O. Griffin, were they replaced on the witness stand, shall be had and received by the court, and given the same consideration, had such testimony or statements of the witnesses been given in open court by them, or adduced fully in the evidence or trial of this cause."

The letter attached is as follows:

"As to your letter of June 26th, 1938, will inform you that Mr. J. O. Griffin, accompanied by Mr. J. P. Durham, came to my office on March 30, 1938. Mr. Griffin agreed to buy Lots 7 and 8 of Block 25 of the Fairfield Heights Subdivision for the sum of $1100.00 cash—$100.00 cash; $100.00 per month for three months, and then to pay all, as he would have a house on the above property by that time. I was to furnish an abstract covering the property and told me to rush it as Mr. Griffin wanted to get married in the new house on the lots June 23, 1938, and the abstract, number being 3120, compiled by the Giddens Abstract Company, was delivered to Mr. J. P. Durham's residence at 3040 Samford Avenue of this city on April 6, 1938, at Mr. Griffin's request.

"Some two months after this date, Mr. Durham informed Mr. Griffin failed to get his loan and said he could not build the house. I asked him what he was going to do and he said he did not know. Mr. Griffin tells you I could not deliver the lots and he wants $200.00 returned. I am informing you if he wants the lots, he may secure them by bringing me the $900.00 and I will furnish him with a good and valid title for the property. I do not see why this should not clear the situation."

It was further stipulated as follows:

"It is stipulated and agreed that in reference to the property Lots 7 and 8, Block 25 of the Fairfield Heights Subdivision as follows: That at the time of the negotiations between the plaintiff and the defendant, Lot 7 of said property was owned by Sam Bailey Hicks, Jr., and had been owned by him for a number of years prior thereto and that Lot 8 was owned by the Louisiana Real Estate and Development Company, Inc., and had been owned by them for a number of years prior thereto, and that on the date of July 29, 1938, Sam Bailey Hicks, Jr., sold and conveyed Lot 7 of Block 25, Fairfield Heights Subdivision to V. C. McGarity for a cash consideration of $400.00, the deed being recorded on the date July 30, 1938, in Conveyance Book 396, page 394 of Caddo Parish, Louisiana; that on the date July 29, 1938, the Louisiana Real Estate and Development Company sold Lot 8 of Block 25, Fairfield Heights Subdivision to V. C. McGarity for a consideration of $425.00 in cash, the deed being recorded on date July 29, 1938, in Conveyance Book 395, page 299 of the Conveyance Records of Caddo Parish, Louisiana. This stipulation is to be received and considered by the court the same as if a duly certified copy of the deeds referred to had been physically filed in the record of this cause.

"It is further stipulated and agreed that on the date of August 31, 1938, written demand was made upon the defendant, J. V. Wilkinson, and upon the surety on his real estate broker's bond, Henry G. Caldwell, by registered mail by communication of Hoye Grafton of date August 31, 1938, addressed to the said parties and that the same were received by the defendant and the surety on his bond on the dates as are set forth or appear on the return receipts, which demands were filed in the record of this cause herewith and are marked and identified as 'Plaintiff's No. 1 and 2' for the purpose of identification.

"It is further stipulated that in view of the fact that the witnesses of the defendant, namely, Sam Bailey Hicks, Jr., and I. S. Bluestein, are not present in court at this time. It is agreed that if they were present they would testify to the effect that on the date of March 30, 1938, they had agreed to sell their lots to the defendant for the same considerations as are mentioned and set forth in the deeds and sales to V. C. McGarity as above referred to; that this agreement as made by them with the defendant, J. V. Wilkinson, was made out of the presence of the plaintiff, J. O. Griffin, and that neither of them communicated the same or notified the same to the said plaintiff in any manner whatsoever."

Mr. I. S. Bluestein is the president of the Louisiana Real Estate and Development Company. The following testimony of plaintiff's explains his refusal to make any further payments on the property. The correctness of this testimony is not denied. It is as follows:

"Q. Mr. Griffin, why did you discontinue payments on this property? A. Well, after I made the second payment I heard that Mr. Wilkinson was in jail so I went to the Court House and looked up the record of the property of the two lots I had purchased and found the owners to be Mr. Hicks and Mr. Bluestein, of the Louisiana Real Estate and Development Company, so I contacted Mr. Hicks and Mr. Bluestein and they told me that they did not know anything about the sale of the lots, so knowing that Mr. Wilkinson was in jail, I became skeptical, I wondered what was happening and why they had not received the payments on the lots, so then I refused to make further payments until I found out just what the condition was.

"Q. Did you demand a return of your money? A. I did.

"Q. He refused? A. Yes, sir.

"Q. Had Mr. Wilkinson ever offered you title to this property, tendered you physical deed to this property? A. No, sir.

"Q. And after you found out or was informed by Mr. Hicks and Mr. Bluestein, who is an officer of the Louisiana Real Estate and Development Company, that he had no authority to sell them and knew

nothing of the sale, you did not make him any further payments than the receipts given to you? A. That is right.

"Q. The only transaction or agreement entered into by Mr. Wilkinson for the purchase of these properties—of these two lots, are the two receipts marked as P–3 and P–4 for identification? A. That is right.

"Q. And it was after you found out that he had no authority to sell it and was informed that he had no authority to sell the property that you refused to make any payment under those terms as set forth in the receipts? A. That is right."

 Plaintiff further testified he dealt with defendant as a real estate broker and not as the owner of the lots; that he knew defendant was bonded and therefore liable for his deals. The only defenses urged by defendant are that he was dealing with plaintiff as owner of the lots, and that he offered to plaintiff title to the said lots, as per letter which is above quoted. The letter, if binding on plaintiff, who had no knowledge of it, is not a compliance with the oral contract in that it calls for a full payment of $900, when the oral contract was for payments of $100 per month. The letter therefore passes out of the case in either instance. It is very evident that plaintiff was dealing with defendant as a broker and not as the owner of the lots, and it is also certain that he was neither the owner of them nor did he have the authority to sell them for the owners. He collected $200 from plaintiff and gave nothing in return. He did not convey the money to the owners of the lots and they knew nothing of the transaction until informed by plaintiff and it is not shown that they ratified defendant's action then,—to the contrary, a short time thereafter they sold the lots to other persons. Plaintiff is clearly entitled to the return of the money paid to defendant.

Act No. 225 of 1918 provides for 10% attorney's fees in cases of this kind. All requirements of the act as to written notice and thirty days' delay were fulfilled by plaintiff before filing the suit.

We are of the opinion that the defendant was serious in perfecting his appeal and that it was not taken for delay for the reason that delay could not be any benefit to him. He had deposited the amount of the judgment and costs at the beginning of the suit.

The judgment of the lower court is correct and is affirmed, with costs.